FRANK E. STRAHAN, Appellant, v. OTIS A. STRAHAN et al.,
Appellees.

JANUARY 17, 1928.

*Cook & Cook,* for appellant.

*Genung & Genung,* for appellees.

ALBERT, J.—A preliminary statement is necessary to an understanding of the real question involved herein.

In May, 1923, Otis A. Strahan, defendant, was in financial trouble. He owned and operated a large farm, and was heavily indebted to the First National Bank of Malvern, Iowa. He had built a residence in the town of Malvern, on which there had been filed a mechanic's lien for a sum of about $3,000, and the lien holders were urging payment and threatening foreclosure of the same.

The plaintiff, Frank E. Strahan, brother of the defendant, is a banker, residing in Wayne, Nebraska. He came to Malvern, and the defendant advised him of his financial distress, and sought to borrow $4,000 from him. Plaintiff informed him that he did not have the money to loan, but would loan it to him if he (plaintiff) could borrow it. Plaintiff went to the above named bank, and succeeded in borrowing $4,000 on his own note, which he loaned to the defendant, and took in return therefor a note

for $4,000, secured by a mortgage on the aforesaid town property, both note and mortgage being signed by the defendant and his wife.

In the latter part of November, 1923, numerous creditors of the defendant Otis A. Strahan's were urging settlement, and, realizing that he was unable to carry his financial load, he went to the First National Bank of Malvern, and made arrangements by which he transferred to the bank his personal property and his farm of 447 acres, subject to incumbrance, and in return therefor received all of the promissory notes held by the bank against him, together with the $4,000 note executed by Frank E. Strahan to the bank. This note was marked "paid," and delivered to Otis A. Strahan. A few days before the Frank E. Strahan note became due, the bank notified him of the due date thereof, which was December 5, 1923. It is apparent that this note, therefore, became due several days after Otis A. Strahan had made the aforesaid settlement with the bank. Frank E. Strahan, on receipt of this notice, not being in a position to pay the note when due, forwarded to the First National Bank of Malvern a renewal note for $4,000. This reached the bank, and was credited by the bank to bills receivable on December 5th. The proceeds of this second note were credited to the account of Otis A. Strahan, who checked the same out of the bank shortly thereafter. This suit is in the usual form for judgment on a note and foreclosure of a mortgage.

Otis A. Strahan and Ida M. Strahan, his wife, filed separate answers, which, so far as material, are, in substance, duplicates. They admit due execution and delivery of the mortgage and note in question, but allege that the plaintiff, Frank E. Strahan, permitted his name to be used in securing credit for the defendant and the issuance of the Frank E. Strahan note to the bank, and claim that the mortgage and note were only delivered to Frank E. Strahan as protection to him against payment of the note he executed to the First National Bank of Malvern, and that, by reason of Otis A. Strahan's having taken up the Frank E. Strahan note from the bank in his settlement with the bank, as above referred to, the debt was paid, and therefore that this mortgage and note are paid. They also, by way of cross-petition, plead this same set of facts, and ask that the mortgage and note be canceled. The issue thus tendered, simply stated, is that

the mortgage and note had been paid, and should be, under the cross-petition, canceled.

A careful reading of the evidence in the case, however, shows that the defendants failed to sustain their claim in this respect. Their claim is that, because Otis A. Strahan had borrowed all the money he could from the First National Bank of Malvern, he then besought his brother to lend him his name on a note, to the end that he might borrow an additional $4,000 from the bank; and to protect his brother from liability on the note given to the bank, this mortgage and note were given by the defendants to plaintiff. They therefore claim that, Otis A. Strahan having paid the note executed by Frank E. Strahan to the bank, the purpose for which the mortgage and note were given had been fully satisfied and paid, and they should be canceled.

This question being passed, however, in our opinion there are certain equitable principles that apply to this situation that are superior to the claims made by the defendant Otis A. Strahan. The evidence in the case shows that, when he made the settlement with the First National Bank, and took up the note executed by Frank Strahan to the bank, he did not notify his brother Frank of this fact. In ignorance thereof, Frank sent the renewal note to the bank; and the $4,000, the proceeds of this renewal note, to which Otis Strahan knew he had no right or interest, were withdrawn from the bank by Otis and expended by him, and he did not notify his brother Frank, at the time, of this fact. It is a settled principle of equity, requiring no citation of authority, that he who comes into a court of equity seeking relief must come with clean hands; and, regardless of what his rights apparently are, if his hands are not clean, he is not granted relief. We think this principle of equity has a special application to the case before us, and it is not only within the province, but it is the duty, of the court in cases of this kind to refuse the relief claimed by the defendant. The action of the defendant in this case was not only a moral wrong, but a despicable fraud committed by one brother upon another.

Or, to view it from another angle, the defendant Otis A. Strahan, without any understanding or agreement whatever, and without the knowledge or consent of Frank Strahan, purported to pay this note, and thereby obtained possession thereof.

On the assumption that he acted in good faith, and for the benefit of the maker, equity would doubtless afford him protection by subrogating him to the rights of a holder, and by permitting him to collect the same from the maker. This would be the utmost that equity could do for him. For the sake of the argument, suppose he be deemed entitled to such subrogation. By accepting from the bank the proceeds of Frank Strahan's second note, which was intended by him as a renewal of the first one, the defendant did thereby, in every equitable sense, collect from his brother the note which he was deemed to hold against him. True, he acted without authority, both in the payment of the note and in the collection of it, and acted in each case without the knowledge or consent of his brother. Yet he is in no position to complain of his want of authority. His one unauthorized act canceled the other. As a holder of his brother's note, he did pay himself out of his brother's money. He has no further need, therefore, of equitable remedy, and has no further right, legal or equitable, against his brother thereon. To sustain his counterclaim thereon would be to enable him to profit out of his own unauthorized acts to the full extent of the amount of the note. It is very clear that his counterclaim is without merit.

The decree entered below is, accordingly, reversed.—*Reversed.*

STEVENS, C. J., and EVANS, DE GRAFF, and MORLING, JJ., concur.